#24861, #24869-a-DG

**2009 SD 17**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

LARRY SAATHOFF,                                   Plaintiff and Appellant,

v.

MYRON KUHLMAN,                                   Defendant, Third Party
                                                 Plaintiff and Appellee,

v.

SANDRA LARSON and
LANCE NOEM,                                      Third-Party Defendants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
HAMLIN COUNTY, SOUTH DAKOTA

* * * *

HONORABLE TIM D. TUCKER
Judge

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 4, 2008
REASSIGNED DECEMBER 29, 2008

OPINION FILED **03/18/09**

MARK V. MEIERHENRY
PATRICK J. GLOVER of
Danforth & Meierhenry, LLP
Sioux Falls, South Dakota

Attorneys for plaintiff
and appellant.


JACK H. HIEB of
Richardson, Wyly, Wise,
  Sauck & Hieb, LLP
Aberdeen, South Dakota

Attorneys for defendant,
Third paraty plaintiff
and appellee.

#24861, #24869

GILBERTSON, Chief Justice (on reassignment).

[¶1.]    Larry Saathoff sued Myron Kuhlman for defamation and intentional infliction of emotional distress based on the implications of a letter to the editor authored by Kuhlman and published in area newspapers. Kuhlman sued Saathoff, Sandra Larson, and Lance Noem for defamation based on three allegations set forth in a petition they circulated. The circuit court granted summary judgment in both suits finding, in part, that the statements were true, or at least half-truths. Saathoff appealed. Kuhlman filed a notice of review, preserving his appeal should this Court reverse the circuit court on Saathoff's claim of error. We affirm.

**FACTS**

[¶2.]    Saathoff began working for the Hamlin County Highway Department in 1978. He was appointed Hamlin County Highway Superintendent in September 1985 and served in that capacity until he resigned on March 16, 2004.

[¶3.]    Kuhlman served as a Township Supervisor for Oxford Township in Hamlin County from 1978 until 2001. He was elected to the Hamlin County Commission in 2001. Kuhlman served as vice chairman of the commission in 2001, and was chairman from 2002 until mid-2004.

[¶4.]    In early 2004, allegations arose that, when purchasing new highway equipment from Butler Machinery Company (Butler Machinery) in 1991 and 1994, Saathoff swapped the new tires and cutting edges on the new equipment with the tires and cutting edges on the old equipment being traded-in. As a result of the swap, the county's new motor graders were purchased without new tires and cutting edges. When Kuhlman heard about these allegations, he confronted Saathoff.

- 1 -

Saathoff claimed that the old machines had better quality tires and cutting blades, and that he was saving the county money by following this practice. Saathoff claimed that the Hamlin County Commission and Butler Machinery were aware of and approved the swapping on the occasions it occurred.[1]

[¶5.]     Kuhlman reported the allegations to State's Attorney Justin Hyde, who conducted an investigation. Hyde reported to the commission that he found nothing in the bid specifications authorizing the swapping practice. He speculated that Saathoff had some "off the books" arrangement with Butler, allowing Butler to lower its bid to ensure acceptance.[2] Hyde indicated it was not proper bidding practice to create bid specs and then deviate from them after the bids were accepted. He informed the commission that the statute of limitations had expired on these activities, but any future occurrences would be prosecuted. Upon receiving this information, the commission met with Saathoff and asked him to resign. The commission had previously decided that if Saathoff refused to resign, proper steps would be taken to formally terminate him. Saathoff resigned on March 16, 2004.

[¶6.]     Following Saathoff's resignation, Saathoff, Larson, and Noem circulated petitions to have Kuhlman removed from the county commission. The petitions alleged that Kuhlman participated in illegal activity while on the

---

1.    Saathoff claims that bidding documents and Hamlin County Commission meeting minutes evidence knowledge of at least one instance of the swapping practices.

2.    The record indicates that at least one of the commissioners believed Saathoff had an unhealthy bias in favor of Butler Machinery and the Caterpillar brand equipment sold by them.

commission, three instances of which are at issue: (1) that Kuhlman met alone with Hamlin County Highway Department employee Steven Palo and discussed Saathoff's resignation, that Kuhlman told Palo not to mention the meeting to anyone, and that the commission did not approve of this meeting; (2) that Kuhlman demanded the April 6, 2004, Hamlin County Commission meeting minutes be changed to reflect that all questions asked during the meeting regarding Saathoff's resignation were answered; and (3) that Kuhlman instructed four county employees to use county equipment to haul fieldstone from his private property. Saathoff, Larson, and Noem asked State's Attorney Hyde to investigate these matters. Upon investigating, Hyde concluded that the allegations lacked merit.

[¶7.]        Saathoff's resignation, the petition to remove Kuhlman from office, and the subsequent investigation garnered significant local press. There were several letters to the editor and stories published regarding the events. On September 1, 2004, Kuhlman wrote a letter to the editor that was published in the *Hamlin County Herald Enterprise*, the *Estelline Journal*, and the *Hamlin County Republican*. One sentence in this letter is the basis of Saathoff's claim. It reads as follows: "After receiving information that as many as 60 new tires and cutting edges had disappeared from new equipment purchased in 1991 and 1994, the State's Attorney was consulted."

[¶8.]        Saathoff filed suit against Kuhlman for defamation and intentional infliction of emotional distress, based on this single sentence. After answering and pleading defenses, Kuhlman moved for summary judgment. In a memorandum decision dated January 23, 2006, Judge Rodney J. Steele granted summary

judgment on the intentional infliction of emotional distress claim,[3] but denied summary judgment on the defamation claim. Based on Judge Steele's rationale for not dismissing the defamation claim, Kuhlman sought leave to amend his answer to assert a counterclaim against Saathoff, and to serve third-party complaints against Larson and Noem, alleging defamation based on the circulated petition. The parties stipulated to, and the court granted, the motion to amend the answer and serve the third-party complaints. Thereafter, Saathoff, Larson, and Noem moved for summary judgment on the defamation claims. In his January 10, 2007, memorandum opinion, Judge Steele granted summary judgment to Noem,[4] but denied Saathoff's and Larson's motions.

[¶9.] After Judge Steele retired, Judge Tim D. Tucker presided over this case. Judge Tucker reconsidered the previously filed summary judgment motions. After conducting another summary judgment hearing, he granted each party's summary judgment motion. Specifically, Judge Tucker held: (1) the statements in the petition and the letter to the editor were political in nature; (2) the common interest privilege is involved and it heightens the standard in the case; and (3) the statements were all true, even if half-truths.

[¶10.] On April 17, 2008, Saathoff filed a notice of appeal claiming the grant of summary judgment to Kuhlman was error. By notice of review, Kuhlman preserved the issue whether the circuit court erred in granting summary judgment

---

3. Dismissal of the intentional infliction of emotional distress claim has not been appealed.

4. The grant of summary judgment to Noem has not been appealed. Therefore, Noem is not a party in this consolidated appeal.

to Saathoff and Larson, and asked that it be considered only in the event this Court reverses the circuit court's grant of summary judgment to Kuhlman.  We affirm.

## STANDARD OF REVIEW

[¶11.]　　Our standard of review on summary judgment is well settled:

> In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law.  The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party.  The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists.  Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied.  If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

Pellegrino v. Loen, 2007 SD 129, ¶13, 743 NW2d 140, 143.

## ISSUE

[¶12.]　　**Whether the circuit court erred in granting summary judgment to Kuhlman, Saathoff, and Larson after determining the veracity of statements arguably amenable to contrary inferences.**

## ANALYSIS AND DECISION

[¶13.]　　"Before the trial judge may examine a summary judgment motion under SDCL 15-6-56 (c) in a libel action, the judge must know the levels of proof for malice at the trial."  Sparagon v. Native Am. Publishers, Inc., 1996 SD 3, ¶31, 542 NW2d 125, 133.  This requires a determination of whether the plaintiff was a public or private figure under the "New York Times" test.  New York Times Co. v. Sullivan, 376 US 254, 84 SCt 710, 11 LEd2d 686 (1964).  We agree with the circuit

court that the parties in this action are public figures, at least in regard to the

allegedly defamatory statements.[5]

[¶14.]     As a consequence of their public figure status, the litigants face a

higher evidentiary burden in proving their claims.

> A public figure bringing a libel case faces a *higher* burden of
> proof than an ordinary civil litigant as a result of the 'New York
> Times Rule.'   This rule prohibits a public official from
> recovering damages for a defamatory falsehood relating to his
> official conduct unless he proves that the statement was made
> with 'actual malice' – that is, with knowledge that it was false or
> with reckless disregard of whether it was false or not.   The rule

---

5.     The circuit court did not directly identify the parties as "public figures."
However, it did state, in its oral conclusions, that:  "The court finds that the
context of both of the statements involved in this action are in the political
arena, clearly the petitions were political in nature, the letter to the editor is
in response to that petition, and is also political in nature."  We believe the
court's statements evidence a finding that the parties are "public figures."

Whether a person is a public figure in a libel case is a question of law.  Nelson
v. WEB Water Dev. Ass'n, Inc., 507 NW2d 691, 697 (SD 1993).  In *Sparagon,*
this Court adopted the U.S. Supreme Court's definition of a public figure.
*Sparagon,* 1996 SD 3, ¶¶18-23, 542 NW2d at 131.  We stated:
>    In some instances an individual may achieve such pervasive fame or
>    notoriety that he becomes a public figure for all purposes and in all
>    contexts.  More commonly, an individual voluntarily injects himself or
>    is drawn in a particular public controversy and thereby becomes a
>    public figure for a limited range of issues.

*Id.* 1996 SD 3, ¶23 (quoting Gertz v. Robert Welch, Inc., 418 US 323, 351, 94
SCt 2997, 3012, 41 LEd 789, 812 (1974)).

For the purposes of this case, it is not necessary to identify whether Saathoff
is classified as a public figure for all purposes or merely a "limited" public
figure.  It is sufficient that Saathoff has voluntarily injected himself into a
public controversy regarding these matters through the petition to oust
Kuhlman.  At minimum, he is a "limited" public figure for these issues and is,
therefore, subject to the heightened evidentiary standards of *New York
Times.*  While we review questions of law de novo, we believe the circuit
court's statements, quoted above, reflect this rationale in support of its
conclusions.  We agree with this assessment.

> further *requires* that actual malice be shown . . . *by 'clear and convincing proof.'*

*Sparagon,* 1996 SD 3, ¶19, 542 NW2d at 131 (citations omitted) (emphasis added).

[¶15.]     This higher *evidentiary* burden to prove "actual malice" extends not only to the proof required at trial, but also *in resisting summary judgment.*

> [W]here the *New York Times* "clear and convincing" evidence requirement applies, the trial judge's summary judgment inquiry as to *whether a genuine issue exists* will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant. Thus, where the factual dispute concerns actual malice, clearly a material issue in a New York Times case, the appropriate *summary judgment* question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by *clear and convincing evidence* or that the plaintiff has not.

Janklow v. Viking Press, 459 NW2d 415, 419 (SD 1990) (overruled on other grounds by Paint Brush Corp., Parts Brush Div. v. Neu, 1999 SD 120, 599 NW2d 384)(emphasis added) (quoting Anderson v. Liberty Lobby, Inc., 477 US 242, 255-56, 106 SCt 2513, 2514, 91 LEd2d 216 (1986)).  "Clearly, the plaintiff has a much greater burden of proof, not only at the trial level, but at the summary judgment stage." *Id.*

[¶16.]     "In [*Anderson*], the Court stated that when the trial court examines a summary judgment motion in a libel claim, it must 'bear in mind the actual quantum and quality of proof necessary to support liability.'" *Sparagon,* 1996 SD 3, ¶30, 542 NW2d at 133 (quoting *Anderson,* 477 US at 254, 106 SCt at 2513). Saathoff identifies no defamatory statements other than Kuhlman's letter to the editor.  Further, he offers no other evidence that suggests Kuhlman's actual malice. Several times, Saathoff states that "the facts are clear" that actual malice was

present.  However, he points to no "facts" other than Kuhlman's use of the term "disappeared."  Saathoff's lack of evidence is most clearly articulated in his response to Kuhlman's interrogatories:

> **27.** Please state all facts, which support your allegation that any communication made by [Kuhlman] regarding [Saathoff] was made with malice and/or with the intent to cause injury to the plaintiff.
>
> **[Saathoff's] Answer:** *The letter speaks for itself.* [Kuhlman's] statement to [Saathoff] in March [2001][6] displays the regard and malice [Kuhlman] had toward [Saathoff].

(Emphasis added.)

[¶17.]     According to Saathoff, Kuhlman, as a commissioner supervising Saathoff, stated that he was dissatisfied with Saathoff's job performance and that his goal was to "get rid of me."  Saathoff did not allege that this conversation was defamatory, only that it indicated malice.  However, he also admitted that this conversation was only about professional matters, not personal animosity between the parties.

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is *merely colorable*, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 US at 249-50, 106 SCt at 2511 (emphasis added).  At most, this is only a colorable claim of Kuhlman's actual malice; Saathoff's mere inferences do not meet the heightened "clear and convincing standard" described in *Anderson*.

---

6.     Saathoff clarified the year of this conversation in his deposition.

[¶18.]    *Anderson* rejects a plaintiff's efforts to manufacture "genuine issues of material fact," without evidence, in order to survive summary judgment.

> Respondents argue, however, that whatever may be true of the applicability of the "clear and convincing" standard at the summary judgment . . . stage, the defendant should seldom if ever be granted summary judgment where his state of mind is at issue and the jury might disbelieve him or his witnesses as to this issue. . . . We do not understand [the plaintiff's cited authority] to hold that a plaintiff may defeat a defendant's properly supported motion for summary judgment in a . . . libel case . . . *without offering any concrete evidence* from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could, disbelieve the defendant's denial of . . . legal malice. The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict. Rule 56 (e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon *mere allegation* or denials of his pleading, but must set forth *specific facts* showing that there is a genuine issue for trial. . . . [T]he plaintiff must present *affirmative evidence.* . . .

*Anderson,* 477 US at 256-57, 106 SCt at 2514 (emphasis added).

[¶19.]    Because no memorandum decision was in the record, we are unable to determine the authority upon which Judge Tucker based his decision. However, "[t]hat the trial court may have entered summary judgment for the wrong reason does not bar this court from affirming the judgment." Staab v. Cameron, 351 NW2d 463, 466 (SD 1984). The circuit court could have properly ordered summary judgment under *Anderson* and our cases following that authority.

[¶20.]    Procedurally, in *New York Times* cases, the plaintiff must prove the *viability* of his or her case in withstanding summary judgment before defenses are raised by the opposing party and considered by the circuit court. Therefore, we do

not reach the issues of the "truth defense" to defamation,[7] or the conditional

privilege under SDCL 20-11-5(3).[8]

---

7.  The dissent agrees that this is a "public figure" case, yet it skips the first inquiry in such cases: whether Saathoff met his summary judgment burden of identifying clear and convincing evidence creating an inference of malice. "The first step is proving that there has been a publication of a false or defamatory statement with knowledge of its falsity or a reckless disregard for the truth." *Janklow,* 459 NW2d, 419 (SD 1990) (citing Harte-Hanks, Inc. v. Connaughton, 491 US 657, 109 SCt 2678, 105 LEd2d 562 (1989)). Instead, the dissent proceeds directly to the second inquiry, "whether a statement implies a false assertion of objective fact," and suggests that a material fact remains in issue regarding the truth or falsity of the statement. *See infra* ¶¶ 30-34. Although the dissent asserts that the words used by Kuhlman create these issues of material fact, it cites no "*clear and convincing evidence*" suggesting actual malice other than the word "disappeared." The inference that Saathoff and the dissent suggest *might* be drawn from Kuhlman's use of the word "disappeared" is insufficient to support the clear and convincing evidentiary burden necessary to survive summary judgment. This word does not create an issue of material fact.

    The dissent's interpretation of the passage quoted from *Anderson, infra* ¶30, ignores and undermines the rest of the *Anderson* decision. The dissent states, ". . . *Anderson* directs that if the plaintiff's claim is based on language that is potentially defamatory, it is the finder of fact's duty to make that determination." *See infra* ¶30 n9. Essentially, the dissent argues that any word that might have the slightest defamatory interpretation, however remote, creates an issue of material fact, thus precluding summary judgment. In application, the dissent suggests that the plaintiff simply needs to show that a statement was made and that he or she feels it was defamatory in order to survive summary judgment. Clearly, this was not the holding of *Anderson.* The dissent's interpretation finds no support in that opinion and is antithetical to the "clear and convincing" summary judgment standard applied in that case.

8.  Similarly, we do not reach Saathoff's argument that Kuhlman defamed him through the publication of his letter in regional newspapers with distribution outside Hamlin County. We note that the newspaper in *New York Times v. Sullivan* was published in New York, New York and had worldwide distribution. The newspaper advertisement at issue in *New York Times,* which criticized public officials in Montgomery, Alabama, reached readers well beyond the citizens of Montgomery.

[¶21.]     Because we affirm the circuit court's decision, we do not reach Kuhlman's preserved issue.

[¶22.]     Affirmed.

[¶23.]     ZINTER, Justice, and BASTIAN, Circuit Judge, concur.

[¶24.]     KONENKAMP, Justice, and SABERS, Retired Justice, dissent.

[¶25.]     BASTIAN, Circuit Judge, sitting for MEIERHENRY, Justice, disqualified.


SABERS, Retired Justice (dissenting).

[¶26.]     The trial court erred in granting summary judgment in each of these cases and I dissent.  Whether the statements at issue permit defamatory inferences to be drawn therefrom are questions to be decided by a finder of fact, not the judge, and should not be disposed of by summary judgment.

[¶27.]     A public official who sues for defamation based on statements made about his public duties must prove that the statements were made with actual malice.  New York Times Co. v. Sullivan, 376 US 254, 279-80, 84 SCt 710, 726, 11 LEd2d 686 (1964).  Actual malice is proven by showing "that the defendant knew the defamatory statements were false or acted with reckless disregard of the truth in publishing the statements."  Krueger v. Austad, 1996 SD 26, ¶21, 545 NW2d 205, 213 (citing New York Times, 376 US at 287-88, 84 SCt at 729-30).  On summary judgment, we use a "'clear and convincing' evidentiary standard in determining whether a genuine issue of actual malice exists[.]"  Anderson v. Liberty Lobby, Inc., 477 US 242, 257, 106 SCt 2505, 2514-15, 91 LEd2d 202 (1986) (citing New York

*Times*, 376 US at 285-86, 84 SCt at 729). But the clear and convincing standard does not change the traditional summary judgment analysis; we still consider all facts and all reasonable inferences from them in the light most favorable to the nonmoving party. *See Krueger*, 1996 SD 26, ¶7, 545 NW2d at 211.

[¶28.] Saathoff claims that Kuhlman defamed him in Kuhlman's letter to the editor that was published in three area newspapers. The specific sentence at issue stated: "After receiving information that as many as 60 new tires and cutting edges had disappeared from new equipment purchased in 1991 and 1994, the State's Attorney was consulted." Kuhlman's own testimony indicates that at the time he wrote his letter to the editor, he knew that the new tires and cutting edges had been traded in with the old machinery, and that they had not "disappeared." The facts demonstrate that Kuhlman not only had a "high degree of awareness of [its] probable falsity[,]" but that he also had actual knowledge of the falsity. *Krueger*, 1996 SD 26, ¶21, 545 NW2d at 213 (quoting Garrison v. Louisiana, 379 US 64, 74, 85 SCt 209, 216, 13 LE2d 125 (1964)). This meets the clear and convincing standard of proof.

[¶29.] Kuhlman alleges that Saathoff and Larson defamed him in three instances in a petition circulated to garner support to remove Kuhlman from the commission. The specific allegations were that Kuhlman (1) met alone with Palo, that Kuhlman told Palo not to tell anyone about the meeting, and that the commission did not approve of the meeting; (2) demanded that the April 6, 2004, Hamlin County Commission meeting minutes be changed; and (3) instructed county employees to use county equipment to haul fieldstone from his private property.

The record and testimony indicate that these insinuations of wrongdoing are not factually supported. First, there was testimony that Kuhlman did not visit Palo alone, nor did Kulhman visit Palo on his own accord; he went upon the request of the commission. Second, there was testimony that all five commissioners, and not Kuhlman on his own, collaboratively decided to change the "unapproved" meeting minutes, and that changing the minutes does not necessarily implicate wrongdoing. Finally, with regard to the last allegation, there was testimony that Kuhlman had *donated* rock to the county, and that the rock was located within the right-of-way of a township road, rather than on Kuhlman's own property. Therefore, this evidence similarly meets the requisite standard of proof.

[¶30.] Moreover, in *Anderson v. Liberty Lobby, Inc.*, the United States Supreme Court cautioned,

> Our holding that the clear-and-convincing standard of proof should be taken into account in [defamation cases involving public figures or public officials when] ruling on summary judgment motions does not denigrate the role of the jury. It by no means authorizes trial on affidavits. Credibility determinations, the weighing of the evidence, and *the drawing of legitimate inferences from the facts are jury functions*, not those of a judge[.][9]

---

9. The majority ignores this cautionary language from *Anderson*. I agree that the plaintiff must meet higher evidentiary standards, even on summary judgment. However, *Anderson* directs that if the plaintiff's claim is based on language that is potentially defamatory, it is the finder of fact's duty to make that determination. To hold otherwise would nullify the teachings of *Anderson* and its progeny, not to mention the fact finder's imperative role in the narrow line of cases similar to this.

477 US at 255, 106 SCt at 2513 (emphasis added).[10] Even under the higher evidentiary standard that a public figure or public official must meet to prevail on a defamation claim, certain determinations must still be made by a finder of fact.

[¶31.] Our case law directs that it is for a fact finder to determine whether a statement implies a false assertion of objective fact. Paint Brush Corp., Parts Brush Div. v. Neu, 1999 SD 120, ¶50, 599 NW2d 384, 397 (citing Lundell Mfg. v. Am. Broad. Cos., 98 F3d 351 (8thCir 1996)). *See also* Manuel v. Wilka, 2000 SD 61, ¶¶34-35, 610 NW2d 458, 465 (holding that summary judgment was improper because it is for a fact finder to determine whether statements constituted actionable false assertions of objective fact); *see generally* Shepard v. Courtoise, 115 FSupp2d 1142, 1147 (EDMo 2000). On summary judgment, "[t]he trial court is not to decide the issues of fact, just determine if any such issues exist." *Paint Brush Corp.*, 1999 SD 120, ¶31, 599 NW2d at 392 (citing Wilson v. Great N. Ry. Co., 83 SD 207, 211, 157 NW2d 19, 21 (1968)).

[¶32.] The circuit court dismissed both suits on summary judgment after finding, among other things, that the statements were true, even if considered half-truths. The court reasoned, "While each side would like to draw an inference that the statements are false, the inference can just as easily be drawn that the statements are true." The court failed to recognize that one's artful ability to choose specific words that make a statement technically true will not protect him if the words can also be interpreted to imply wrongdoing by the plaintiff. However,

---

10. *Sparagon v. Native Am. Publishers, Inc.*, 1996 SD 3, 542 NW2d 125, and *Krueger,* 545 NW2d 205, are distinguishable from the facts here as these cases did not involve statements amenable to contrary conclusions.

whether this is the case is a determination that should be made by a fact finder, not a judge on summary judgment.

[¶33.] Saathoff's claim focuses on the word "disappeared." Viewed in the light most favorable to the nonmoving party, this statement carries the reasonable implication that Saathoff stole the new tires and cutting edges. Nonetheless, whether this statement implies a false assertion of objective fact is a question of fact to be decided by a jury. *Anderson* 477 US at 255, 106 SCt at 2513; *Paint Brush Corp.*, 1999 SD 120, ¶50, 599 NW2d at 397. For this reason, it was error for the trial court to grant summary judgment.

[¶34.] The reasoning and conclusion are the same for Kuhlman's claims against Saathoff and Larson. All three allegations, when viewed in the light most favorable to the nonmoving party, can be reasonably interpreted to imply that Kuhlman was involved in wrongdoing, whether it was meeting with an individual in a manner exceeding his authority, wrongfully requiring meeting minutes to be changed, or improperly using county resources for a personal benefit. Therefore, it is for a jury to determine whether the statements imply false assertions of objective fact. *Anderson,* 477 US at 255, 106 SCt at 2513; *Paint Brush Corp.*, 1999 SD 120, ¶50, 599 NW2d at 397. Summary judgment in this instance was similarly improper.

[¶35.] Moreover, Saathoff and Kuhlman have both claimed damages from the other party's actions. For these situations, the United States Constitution and the South Dakota Constitution safeguard one's right to a jury trial. *See* US Const amend VII ("In [s]uits at common law, where the value in controversy shall exceed

twenty dollars, the right of trial by jury shall be preserved . . . ."); SD Const art VI, sec 6 ("The right of trial by jury shall remain inviolate and shall extend to all cases at law without regard to the amount in controversy . . . ."). By affirming the trial court's grants of summary judgment, this Court is violating these constitutional mandates.

[¶36.] Due to the nature of the statements, genuine issues of material fact exist as to whether these statements were made with malice. Further, granting summary judgment in light of both parties' damages unconstitutionally denies them their right to a jury trial. For these reasons, the trial court should be reversed, and the cases remanded for trial.

[¶37.] KONENKAMP, Justice, joins this dissent.